IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta
NOV 0 7 2007
JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

GREGORY L. TIPPITT,

    Plaintiff,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY, and MUNICH
AMERICAN REASSURANCE COMPANY
GROUP LONG TERM DISABILITY
INSURANCE PLAN,

    Defendants.

CIVIL ACTION NO.
1:02-CV-1140-JEC

### ORDER & OPINION

This ERISA case is presently before the Court pursuant to a Mandate issued by the Eleventh Circuit on November 15, 2006. (Eleventh Circuit Mandate ("Mandate") [104].) Plaintiff filed this action to obtain long-term disability benefits that he alleges defendants wrongfully withheld. (Compl. [1].) Following a bench trial, the Court issued an order denying plaintiff any relief and entering judgment in favor of defendants. (Order [93].) On appeal, the Eleventh Circuit reversed, and remanded the case back to this Court to make additional findings of fact relevant to plaintiff's eligibility for long-term disability benefits. (Mandate [104].) The Court has reviewed the record and each party's response to the

Eleventh Circuit's opinion, and issues the following order and opinion in compliance with the Mandate.

## **BACKGROUND**

The Court described the facts underlying this lawsuit in extensive detail in its previous order following a bench trial on the merits of the case. (Order [93] at 3-7.) Briefly, defendant Reliance Standard Life Insurance Company ("Reliance") is the insurer and administrator of a long-term disability insurance plan ("the Plan") offered to employees of Munich American Reassurance Company ("MARC"). (*Id.* at 1.) The Plan is an "employee welfare benefit plan" and a "group health plan" governed by the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff enrolled in the Plan when he began working for MARC in 1982. (*Id.* at 3.)

Pursuant to the Plan, an insured is entitled to long-term disability benefits if he:

(1)  is Totally Disabled as the result of a Sickness or Injury covered by this [Plan];

(2)  is under the regular care of a Physician;

(3)  has completed the Elimination Period; and

(4)  submits satisfactory proof of Total Disability to [Reliance].

(Administrative Record ("AR") [31] at 13.) The Plan defines "Totally Disabled" to mean that:

[A]s a result of an Injury or Sickness:

(1) during the Elimination Period, an Insured cannot perform each and every material duty of his/her regular occupation; and

(2) for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation.

(*Id.* at 8.)   The "Elimination Period" is 180 consecutive days of "Total Disability." (*Id.* at 5.)

The Plan distinguishes between total and partial disability. With respect to partial disability, the Plan provides that:

(a) 'Partially Disabled' and 'Partial Disability' mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period.

(*Id.* at 8.)   Pursuant to this provision, an insured who is only partially disabled during the 180-day elimination period is not entitled to any benefits under the Plan.  (*Id.*)

Plaintiff resigned from MARC on January 7, 2000. (AR at 196.) Following his resignation, plaintiff submitted a claim to Reliance for long-term disability benefits effective January 10, 2000. (*Id.*) In his application for benefits, plaintiff stated that he had been suffering from joint pain, back pain, cluster headaches, and fatigue for many years, and that he was no longer able to work because he

3

could not sit upright due to extreme pain in his hips and legs. (*Id.* at 196, 465.) Plaintiff's primary care physician, rheumatologist, physical therapist, and ophthalmologist provided Reliance with reports concerning plaintiff's medical condition. (*Id.* at 236, 357-471.)

After reviewing the terms of the Plan and plaintiff's medical records, Reliance concluded that plaintiff was not eligible for long-term benefits. (*Id.* at 137-139.) In reaching its decision, Reliance interpreted the "each and every material duty" language of the Plan to require plaintiff to show that he could not perform *any* of the material duties of his job during the elimination period. (AR at 137-39.) Based on plaintiff's medical information, Reliance determined that plaintiff was capable of performing at least some of his material duties. (*Id.*) Accordingly, Reliance denied plaintiff's application for benefits. (*Id.*)

Plaintiff subsequently filed this action alleging that he had been wrongfully denied benefits. (Compl. [1] at ¶ 1.) Following a bench trial, the Court upheld Reliance's decision. (Order [93] at 47.) Relying on decisions from the Fourth and Sixth Circuits, the Court agreed with Reliance that the "each and every material duty" language required plaintiff to show that he was unable to perform *any* of the material duties of his occupation during the elimination period. (*Id.* at 38.) The Court explained that:

4

if an insured can perform even one of the material duties of his or her occupation, he or she is not disabled under the provision of Reliance's LTD policy requiring that, as a prerequisite to recovering benefits, "during the Elimination Period, an Insured cannot perform each and every material duty of his/her regular occupation.

(*Id.*) Reviewing the administrative record, the Court found that the weight of the evidence demonstrated that plaintiff was "more than capable of performing some of the duties of his occupation." (*Id.* at 42.) Accordingly, the Court concluded that plaintiff was not eligible for long-term disability benefits under the Plan, and it entered judgment for defendants. (*Id.* at 47.)

On appeal, the Eleventh Circuit rejected the Court's interpretation of the Plan. *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1237 (11th Cir. 2006) ("Accepting the factual premise, we cannot accept the legal one which is that anyone who can perform some of his duties during some of the work day is partially disabled and therefore not totally disabled."). Explaining its reasoning, the Circuit Court emphasized the Plan's distinction between "total disability" and "partial disability." *Id.* at 1236-37. An insured is "partially disabled" under the Plan if he is "capable of performing the material duties" of his occupation "on a part-time basis or some of the material duties on a full-time basis." (AR at 8.) The Circuit Court interpreted this provision to mean that an insured is partially disabled if he can perform "all of the duties of

5

[his] occupation" on a part-time basis or "some, but not all, of the duties of his occupation" on a full-time basis. *Tippitt,* 457 F.3d at 1236-37. The Court concluded, further, that an insured who is too disabled to fit within the definition of "partially disabled" is "totally disabled" under the Plan. *Id.* at 1237. Accordingly, the Court held that an insured is entitled to long-term disability benefits under the Plan unless he is able to perform all of the duties of his job on a part-time basis or some of the duties of his job on a full-time basis. *Id.*

As noted above, this Court rejected plaintiff's claim based on its finding that plaintiff could perform "some of the duties of his occupation." (Order [93] at 42.) The Court did not specifically address whether plaintiff could perform *all* of his duties on a part-time basis or some of his duties on a full-time basis. The Eleventh Circuit remanded the case back to this Court to make those factual findings, and to complete the remaining steps of the review process in order to determine whether plaintiff is totally disabled and thereby eligible for benefits under the Plan. *Tippitt,* 457 F.3d at 1237-38.

6

**DISCUSSION**

I.  **Plaintiff was able to perform all of his material job duties on a part-time basis during the elimination period.**

When plaintiff resigned from MARC on January 7, 2000, he was working in the position of Assistant Manager of Computer Information Systems. (AR at 196, 199.) Plaintiff's self-described job duties in this position were: (1) managing application software development; (2) providing technical assistance for management; and (3) maintaining all computer, telephone, and network systems. (*Id.*) The physical requirements of the job included: (1) using a personal computer; (2) talking on the phone; (3) and attending meetings.[1] (*Id.*) According to a "job description" form completed by plaintiff's immediate supervisor, plaintiff spent approximately 80% of his time working with MARC's computer systems and 20% of his time performing miscellaneous tasks and paperwork. (*Id.* at 222.) Based on these descriptions, all of plaintiff's job duties were sedentary: they were performed either while sitting at a computer terminal or with

---

[1] Plaintiff contends that Reliance erred by using the United States Department of Labor's *Directory of Occupational Titles* ("DOT") to determine the material duties of plaintiff's occupation. (AR at 215.) Reliance identified DOT job description 169.167-082 "Manager, Computer Operations" as being most similar to plaintiff's position at MARC. (*Id.* at 138, 214-19.) This occupation is classified as "sedentary with minimal physical requirements." (*Id.* at 137.) The DOT job description is similar to, if slightly more comprehensive than, plaintiff's own description of his duties. (*Id.* at 217.) However, the Court will rely on plaintiff's self-described job duties for purposes of this Order.

7

the option of sitting or standing while attending a meeting or talking on the phone.[2]

Plaintiff stated on his disability claim form that he could no longer work because he was "unable to sit upright due to extreme pain in [his] hips and legs." (AR at 196.) In support of his claim, plaintiff submitted reports of various doctors and specialists concerning plaintiff's medical condition. (*Id.* at 357-471.) These reports indicate that plaintiff was unable to work in a competitive, full-time position during the elimination period. (*Id.* at 62, 295, 407.) However, multiple members of plaintiff's medical team reported that plaintiff could complete three hours of sedentary work during an eight-hour workday.[3] For example, Dr. Schatten indicated that plaintiff could work for three hours a day while seated, as did Drs. Thacker, Gottlieb, and Kilcrease. (*Id.* at 60, 68, 288, 407, 466.)

---

[2] Plaintiff's recent suggestion that he also was required to crawl around computer and telephone equipment is unpersuasive. (Pl.'s Post-Appeal Memorandum [108] at 5.) There is no evidence in the administrative record to suggest that plaintiff, as the Assistant Manager of Computer Information Systems, was required to personally install computer and telephone equipment. (*See* AR at 199, 222-24.) To the extent this type of activity was required, it would have been delegated to one of the technicians that plaintiff supervised. (*Id.* at 224.)

[3] As the Court acknowledged in its previous Order, a few reports suggest that plaintiff could only work one hour in an eight-hour workday. (Order [93] at 43.) However, the bulk of the evidence is that, with breaks, plaintiff could work up to three hours in an eight-hour workday. (*Id.*)

In addition, all of plaintiff's doctors indicated that plaintiff was able to use his hands for keyboard manipulation. (*Id.* at 61, 69, 288, 407.) The weight of the evidence thus demonstrates that plaintiff was able to do all of his job duties on a part-time basis during the elimination period.[4]

Moreover, there is evidence in the administrative record that plaintiff was less restricted during at least a portion of the elimination period. To be eligible for benefits under the Plan, plaintiff had to complete the elimination period, which is defined as 180 consecutive days of total disability. (AR at 5.) Plaintiff's first day of total disability was January 10, 2000. (*Id.* at 196.) To prevail on his claim, plaintiff thus had to show that he was totally disabled from January 10, 2000 through July 9, 2000. In a self-evaluation completed on February 28, 2000, however, plaintiff denied having many symptoms related to his condition and described his hip pain as between "mild" and "moderate." (*Id.* at 450.) Approximately one month later, on March 30, 2000, plaintiff again described his symptoms as "mild pain improved." (*Id.* at 266.) Plaintiff does not explain how mild or even mild to moderate hip pain would have prevented him from performing any of his job duties,

---

[4] The Eleventh Circuit indicated in its opinion that three hours is a substantial enough fraction of the workday to constitute "part-time work." *Tippitt,* 457 F.3d at 1237.

9

either on a full-time or a part-time basis.

Based on the above evidence, the Court finds that plaintiff was able to do all of his material job duties on at least a part-time basis during a substantial portion of the elimination period. Accordingly, plaintiff was not "totally disabled" as that term is defined by the Plan, and was not entitled to long-term disability benefits.

## II. Reliance's decision to deny plaintiff long-term disability benefits was correct.

In its opinion, the Eleventh Circuit held that Reliance's decision should be reviewed under the heightened arbitrary and capricious standard. *Tippitt,* 457 F.3d at 1234. The first step in applying the heightened arbitrary and capricious standard is to engage in a *de novo* review of the administrator's decision. *Id.* at 1232. *See also HCA Health Serv. of Georgia, Inc. V. Employers Health Ins. Co.,* 240 F.3d 982, 993-94 (11th Cir. 2001). If the decision is *de novo* correct, it is upheld and the Court's inquiry ends. *Tippitt,* 457 F.3d at 1232; *HCA,* 240 F.3d at 994.

Reliance's decision to deny benefits was based on an interpretation of the Plan that was rejected by the Eleventh Circuit. Applying the Eleventh Circuit's interpretation, however, Reliance's decision still was correct because the weight of the evidence in the administrative record indicates that plaintiff was not eligible for

benefits under the Plan. Reliance's decision to deny benefits should therefore be upheld under the heightened arbitrary and capricious standard.

### III. Reliance's decision was not arbitrary and capricious.

Even assuming Reliance's decision was not correct, it still should be upheld under the applicable standard of review. Applying the heightened arbitrary and capricious standard, the Court must determine whether an administrator's wrong decision is "nonetheless reasonable." *Tippitt,* 457 F.3d at 1232; *HCA*, 240 F.3d at 994. If so, the decision is entitled to deference unless it was "tainted by self-interest." *Tippitt,* 457 F.3d at 1232.

Reliance's decision was based on a Plan interpretation that was adopted by the Fourth and Sixth Circuits, and that was originally accepted by this Court. *See Gallagher v. Reliance Standard Life Ins. Co.,* 305 F.3d 264, 274 (4th Cir. 2002) (finding that plaintiff was ineligible for benefits under the Plan where he could not show that he was unable to perform *all* the duties of his past occupation)(emphasis in original) and *Carr v. Reliance Standard Life Ins. Co.,* 363 F.3d 604, 607 (6th Cir. 2004)("If a claimant can perform even one material duty of his regular occupation during the Elimination Period, he is not totally disabled."). Reliance's interpretation of the term "each and every material duty"--while ultimately found to be incorrect--was certainly reasonable.

11

Reliance's decision was also based on a factual determination that plaintiff did not suffer from a condition that rendered him "totally disabled" during the elimination period. This determination was reasonable, given the conflicting evidence in the record concerning plaintiff's condition.

Plaintiff's rheumatologist, Dr. Schatten, attributed plaintiff's pain to "undifferentiated spondyloarthropathy" in both his right and left hip. (AR at 469.) Dr. Schatten later confirmed the diagnosis of spondyloarthropathy and indicated that plaintiff also had a "moderately severe" case of Primary Sjogren's Syndrome. (*Id.* at 465-66.) Plaintiff's other medical providers, however, did not agree with either diagnosis. Dr. Alarcon, a rheumatologist at the Kirklin Rheumatology Clinic, stated that her evaluation of plaintiff "was unrevealing in terms of particular joint disease." (*Id.* at 448.) Dr. Alarcon indicated that she did not feel comfortable diagnosing plaintiff with spondyloarthropathy, and that she was able to freely move both of plaintiff's hip joints when she distracted plaintiff. (*Id.*) Dr. Gottlieb, a rheumatologist retained by Reliance to evaluate plaintiff, concluded that he "d[id] not believe that [plaintiff] has Sjogren's or a seronegative spondlyoarthropathy." (*Id.* at 45.) Even plaintiff's primary care physician, who stated that she believed plaintiff was disabled due to pain, indicated that she was unsure if plaintiff's complaints of pain were consistent with

any clinical findings.[5]  (*Id.* at 70, 321.)

When a conflicted administrator's decision is wrong but reasonable, the administrator has the burden of showing that the decision was not "tainted by self-interest." *Tippitt,* 457 F.3d at 1232; *HCA,* 240 F.3d at 994-995.  An administrator may carry this burden by demonstrating that "the opinions and evidence it relied on in denying the plaintiff's claim were . . . at least as objectively reliable as the countervailing opinions and evidence." *Wise v. Hartford Life & Accident Ins. Co.,* 360 F.Supp. 2d 1310, 1323 (N.D. Ga. 2005) (Story, J.).  As the Court explained in *Wise*:

> By demonstrating that it chose to follow what it reasonably perceived as equally or more objectively reliable data, the insurer substantially ameliorates any fears that its decision was motivated by self-interest rather than by a good faith effort to exercise its discretion to interpret and apply the plan.

*Id.*  See also *Barchus v. Hartford Life and Accident Ins. Co.,* 320 F.Supp. 2d 1266, 1289 (M.D. Fla. 2004)("'Even a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of participants and beneficiaries.'")(quoting *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1568 (11th Cir. 1990)).

---

[5] Images of plaintiff's hip that were taken during the relevant time period were normal.  (AR at 321, 452.)

13

Reliance has met its burden in this case. As discussed above, the weight of the evidence in the administrative record supports a denial of benefits. The general consensus of plaintiff's medical team is that plaintiff was able, for at least some portion of the elimination period, to perform three hours of sedentary work during an eight-hour workday. Plaintiff's medical records suggest that he was even less restricted in late February and March, 2000. The administrative record is notably lacking in objectively reliable evidence to substantiate plaintiff's claim that he was "totally disabled" during the entire elimination period. *See Barchus,* 320 F. Supp. 2d at 1290 (finding that defendant's decision was not tainted by self-interest where it was well-supported in the administrative record).

In addition, Reliance demonstrated good faith during the review process. *See Fick v. Metro. Life Ins. Co.,* 347 F. Supp. 2d 1271, 1286 (S. D. Fla. 2004)("When making a determination as to whether the administrator abused its discretion by advancing its own self-interest, a court might consider such evidence as whether the administrator can demonstrate the existence of a routine practice by which it reviews claims, and that it followed that routine practice in the present case."). Reliance's initial denial letter reflects a thorough review of all of the evidence that plaintiff submitted in support of his claim. (AR at 137-39.)

On appeal, Reliance gave plaintiff the opportunity to present additional evidence, and to have his claim reviewed by a different individual than the investigator who originally denied his claim. (*Id.* at 40.) Before making a decision on plaintiff's appeal, Reliance requested additional assistance from Dr. Schatten, specifically asking him to address the discrepancy between his diagnosis of spondyloarthropathy and Dr. Alarcon's findings upon examining plaintiff in February, 2000. (*Id.* at 54-56.) Reliance also obtained an independent evaluation by Dr. Gottlieb. (*Id.* at 43-45.)

Although it was under no obligation to further review plaintiff's claim, Reliance offered plaintiff what essentially amounted to a second appeal. (*Id.* at 34-37.) Upon plaintiff's request, Richard D. Walsh, the manager of Reliance's Quality Review Unit, agreed to personally review plaintiff's file following his first appeal. (AR at 34.) Upon reviewing the file, Walsh concluded that plaintiff's subjective complaints did not reasonably support a finding that plaintiff was totally disabled throughout the elimination period. (*Id.* at 36.) Walsh subsequently issued a well-reasoned denial letter explaining his decision with specific reference to evidence in the administrative record. (*Id.* at 34-37.)

Based on the above evidence, the Court concludes that Reliance's decision to deny benefits in this case was not the product of self-

interest, but of a careful evaluation of the evidence concerning plaintiff's condition in light of the Plan's eligibility requirements. Plaintiff has produced no evidence that the decision was arbitrary and capricious. For this additional reason, Reliance's decision to deny benefits should be upheld.

### IV. The Eleventh Circuit's recent decision in *Oliver v. Coca-Cola* does not change the Court's analysis.

Plaintiff has filed a motion for leave to supplement its post-appeal memorandum to address the Eleventh Circuit's recent decision in *Oliver v. Coca-Cola Co.*, 497 F.3d 1181 (11th Cir. 2007). (Pl.'s Mot. for Leave [113].) The Court **GRANTS** plaintiff's motion, and has considered plaintiff's supplemental memorandum. However, the Court finds that *Oliver* is not controlling because it involves a materially different set of facts than the case at bar.

The plaintiff in *Oliver* was involved in a car accident, which left him unable to perform his job at Coca-Cola because of chronic pain and debilitating headaches. *Oliver*, 497 F.3d at 1186. He submitted a claim under Coca-Cola's long term disability plan, which provided benefits to any employee with "a physical or mental illness or injury [that] continuously disables [the employee] from performing his normal duties." *Id.* In support of his claim, plaintiff submitted voluminous medical documentation from six treating physicians consistently attesting to plaintiff's disability. *Id.* at

16

1196. Plaintiff also submitted the results of several objective diagnostic laboratory tests, including an MRI, two EMGs, and a nerve conduction test. *Id.* The administrator of Coca-Cola's plan nevertheless denied plaintiff's claim, citing a lack of "objective medical evidence" that plaintiff was disabled. *Id.*

The Eleventh Circuit found that the administrator's decision was arbitrary and capricious for a number of reasons, none of which are applicable to this case. As an initial matter, the Court noted that the plan at issue in *Oliver* did not require "objective medical evidence" of disability. *Oliver*, 497 F.3d at 1196-1197. Instead, under the express terms of the plan, a claimant was entitled to disability payments so long as he submitted: (1) a written application; and (2) medical certification of his disability. *Id.* at 1196. It was undisputed that the plaintiff had met both of these requirements, and the Court found that the administrator's request for additional "objective" evidence could not be justified by any language in the plan. *Id.*

In this case, however, the Reliance plan requires a claimant to submit "satisfactory proof of [his] Total Disability [to Reliance Standard]." (Order [93] at 23.) Thus, contrary to the plan in *Oliver*, the Reliance plan explicitly gives the administrator discretion to determine what type of medical evidence is acceptable to support a claim for disability benefits.

17

In addition, the *Oliver* Court noted that the plaintiff in that case had in fact submitted objective medical evidence in support of his claim, including two EMGs and a nerve conduction test, but that the administrator had simply ignored those tests, along with any other evidence that would undermine the administrator's desired result in the case. *Id.* at 1197-98. The administrator's "disturbing pattern" of disregarding evidence that did not support its decision was apparent from its denial letter, which conspicuously failed to list the two EMG tests and the nerve conduction test that supported plaintiff's claim. *Id.* at 1199. Unlike the administrator in *Oliver*, Reliance did not disregard any evidence that plaintiff submitted in support of his claim. To the contrary, Reliance's initial denial letter, as well as its decisions on appeal, reflect a thorough review of all of the evidence in the Administrative Record. (AR at 34-37, 137-39.)

Finally, the *Oliver* Court found that the administrator's decision was contrary to all of the medical evidence in the record, including the assessment of plaintiff's six examining physicians who uniformly attested to plaintiff's disability. *Oliver*, 497 F.3d at 1196. As discussed above, however, Reliance's decision represents a reasoned choice among conflicting, reliable evidence--a practice that the Eleventh Circuit explicitly upheld in *Oliver*. *Id.* at 1199. Indeed, Reliance's decision is in accord with the weight of the

evidence from plaintiff's own medical team that plaintiff was capable of performing three hours of sedentary work during an eight-hour workday, and that during this three hours plaintiff was able to perform all of his job duties.

Contrary to plaintiff's suggestion, *Oliver* did not create a broadly applicable rule requiring disability plan administrators to credit, in every case, a claimant's subjective complaints of pain. The *Oliver* Court simply found that in the context of the plaintiff's diagnosis and medical records, and under the terms of the plan at issue in that case, the administrator's decision to deny benefits because of a lack of "objective medical evidence" was arbitrary and capricious. The Reliance plan is materially different from the plan in *Oliver*, as is the medical evidence concerning plaintiff's disability. Accordingly, *Oliver* does not affect the Court's analysis or the result in this case.

## CONCLUSION

In compliance with the Eleventh Circuit Mandate, the Court finds that plaintiff was able to perform all of the duties of his job on a part-time basis during the elimination period. The Court accordingly concludes that Reliance's decision to deny benefits was correct and should be upheld. In addition, the Court finds that Reliance's decision should be upheld because it was not arbitrary and capricious. The Court directs the Clerk to enter judgment for

19

the defendant. The Court also **GRANTS** plaintiff's Motion for Leave to Supplement Plaintiff's Post-Appeal Memorandum to Address Recent Eleventh Circuit Legal Authority [113].

    SO ORDERED, this ___ day of November, 2007.

                                                   JULIE E. CARNES
                                                   UNITED STATES DISTRICT JUDGE